IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER CHURCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-1348-K |
| | § | |
| ALLIANCE RESIDENTIAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alliance Residential's ("Alliance") Motion for Summary Judgment (Doc. No. 13). The Court has reviewed Alliance's motion and brief in support, Plaintiff Jennifer Church's ("Church") response, Alliance's reply, the evidence, and applicable law. After review, the Court rules that Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's case is dismissed with prejudice.

I.      Factual Background

Church began working for Alliance in March, 2007. She worked as a trainer in Alliance's Dallas office. Church worked in that position until late 2009, when the events giving rise to this lawsuit took place. In early September, 2009, Alliance identified Church as an employee to be included in a reduction in force ("RIF"). On September 15, 2009, Church informed four supervisors that she was pregnant. On September 22, 2009, Alliance informed Church she was being terminated in the RIF,

effective October 2, 2009.

Starting in 2008, Alliance began restructuring parts of the company to account for a downturn in the economy.  This included both the RIF and restructuring remaining positions.  In mid-August 2009, Alliance executives assigned Connie Spalla ("Spalla"), Alliance's Senior Vice-President of Finance to identify further cost-saving measures.  Spalla worked independently of human resources and supervisors in making decisions about cutting employees and restructuring positions.

On August 28, 2009, Spalla met with Alliance executives to present her cost-reduction recommendations.  Spalla recommended two phases of layoffs starting in October 2009 and continuing through the end of 2009.  During that meeting, Spalla recommended that Alliance terminate Church in phase two and eliminate the Dallas trainer position.  At the end of the meeting, executives encouraged Spalla to accelerate the layoffs.  Because Spalla had a web-based training plan ready to implement, Spalla moved Church's termination up to October 2, 2009.  Spalla decided this on or before September 3, 2009.  During this time, Spalla did not know that Church was pregnant.

Spalla finalized company layoffs and informed human resources on September 20, 2009.  Human Resources informed Church two days later that Alliance was laying her off, effective Octoer 2, 2009.  Alliance terminated 12 others October 1-2, 2009, including four men and 8 non-pregnant women.  In 2008-2009, Alliance laid off over 100 employees, of which Church was one.

II.     Alliance's Summary Judgment Motion

Church claims that Alliance discriminated against her because her pregnancy was a motivating factor in Spalla's decision to terminate her. *See* Tex. Lab. Code § 21.125 (West 2006).  Church argues that there is direct evidence of discrimination against her because a pencilled-in entry moved Church from phase two to the October 2, 2009 layoffs.  Church further argues that some aspects of Alliance's explanation are factually inconsistent, which is circumstantial evidence of pretext.

Alliance moved for summary judgment on Church's sole claim, pregnancy discrimination.  First, Alliance argues that Church has failed her *prima facie* burden because there is no evidence Spalla, as the relevant decision maker, had any knowledge of Church's protected status.  Second, even if Church has made a *prima facie* case, Alliance argues it has produced a legitimate, non-discriminatory reason for terminating Church, and Church has no evidence of pretext.

A.      Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

- 3 -

All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc..,* 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; but, the nonmovant may not rest upon allegations in the pleadings to make such a showing. *Id.* at 321-25; *Anderson*, 477 U.S. at 255-57. Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-52; *Boudreaux*, 402 F.3d at 540. If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

B.     Applicable Law to Chuch's Pregnancy Discrimination Claim

Church asserts a claim of pregnancy discrimination under the Texas Commission on Human Rights Act ("TCHRA"). Tex. Lab. Code §§ 21.051, 21.106(a) (West 2006). The TCHRA is the Texas act which provides a state remedy to execute the policies of Title VII. *Id.* §21.001. Because the TCHRA executes Title

- 4 -

VII policies, claims brought under the TCHRA are analyzed in the same way as cases brought under Title VII. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). Under the TCHRA, Church may show discrimination through either direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

       1.     Chuch's Direct Evidence

Church alleges that she has direct evidence of discrimination to support her pregnancy discrimination claim. Direct evidence of discrimination is evidence is sufficient to prove an employer's discriminatory intent without inference, presumption or resort to other evidence. *Fierros v. Tex. Dept. Of Health*, 274 F.3d 187, 195 (5th Cir. 2001). Where a plaintiff presents direct evidence of discrimination, the familiar *McDonnell Douglas* burden shifting analysis is inapplicable to determining a summary judgment motion. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Spalla created a RIF list for the August 28, 2009 meeting. The RIF list shows that Church's termination was moved up from phase two to the October 2, 2009 termination date. According to Spalla, she pencilled-in this change after the meeting, but on or before September 3, 2009, in response to requests that she accelerate the layoffs. To be direct evidence of discrimination, the moving of Church's termination date would have to show on its face that Alliance discriminated against Church. *See*

- 5 -

*Fierros*, 274 F.3d at 195 (5th Cir. 2001).  Church admits that she has no evidence to contradict Spalla's testimony and presents no evidence to show how the change alone proves pregnancy discrimination.  Church has no direct evidence in this case of pregnancy discrimination

      2.     Church's Prima Facie Case of Discrimination

In the absence of direct evidence, a plaintiff may prove a case of pregnancy discrimination with circumstantial evidence using the burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination.  *Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 593.  The parties agree that to establish a prima facie case, Church must, at least, establish that: (1) she belongs to a protected group, (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) either she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, she was treated less favorably than similarly situated employees.  *Id.*

Alliance contends that a pregnancy discrimination claim proceeds under a modified *McDonnell Douglas* test.  Under the modified *McDonnell Douglas* test a plaintiff must also show that the employer was aware of the plaintiff's protected status.  *See Toronka v. Continental Airlines, Inc.*, 411 F.ed Appx. 719, 723 n.2, 2011

WL 493101 (5th Cir. 2011).  The Court need not decide whether a plaintiff must establish that the decision maker was aware of plaintiff's protected status as part of a *prima facie* case for pregnancy discrimination as Alliance has offered a legitimate non-discriminatory reason, and evidence of the decision maker's lack of knowledge may be considered under a pretext analysis.  *See Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5th Cir. 2001) (stating that in the pretext analysis, a court may consider any evidence that supports the employer's case and that may be properly considered on motion for judgment as a matter of law).  The Court will assume without deciding that Church's claim is analyzed under the less rigorous, traditional *McDonnell Douglas* test.

Alliance's entire argument that Church has failed to establish a *prima facie* case is that Spalla, and Alliance generally, were unaware of Church's pregnancy when Spalla decided to terminate Church.  Alliance, as the moving party, has the burden to identify portions of the record demonstrating an absence of a genuine issue of material fact.  *See Celotex,* 477 U.S. at 322-25.  Alliance does not dispute that the record shows Church was:  (1) part of a protected group, (2) qualified for her position as a trainer, (3) terminated, which is an adverse employment action; and (4) treated differently than similarly situated employees, in so much as other trainers were not terminated.  Because Alliance's argument rests on its contention that Church's claim proceeds under a modified *McDonnell Douglas* test, and the Court need not resolve

that disputed area of law to decide Alliance's motion, the Court assumes, without deciding, that Church has made a *prima facie* showing of discrimination.

C.    Alliance's Legitimate, Non-Discriminatory Explanation

Having assumed that Church has made a prima facie showing, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its actions. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993); *Nasti*, 492 F.3d at 593. This is a burden of production, not persuasion. *See St. Mary's Honor Ctr.*, 502 U.S. at 507. Alliance must produce reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of Church's termination. *See id.* Alliance has shown that it was going through restructuring in 2008 and 2009. Alliance has also produced evidence showing that it terminated Church as part of an ongoing RIF, which affected over 100 employees. Spalla identified Church specifically in the RIF because the Central Region, of which Church was a part, had suffered a business loss; Church's training program was being moved on-line to reduce costs; and Alliance was going to leave only trainer position in Texas. Spalla decided the trainer position would be in the Houston office, as opposed to Church's position in Dallas, because the Houston office had more properties to support directly and more opportunities for the Houston trainer to multitask by assisting in other areas. The Court finds that Alliance has produced a legitimate non-discriminatory reason for its actions.

D.     Church's Evidence of Pretext

Having found that Alliance has produced a legitimate, non-discriminatory explanation, the presumption of discrimination created by Church's prima facie case disappears. *See Nasti*, 492 F.3d at 593. Where an employer produces a legitimate non-discriminatory explanation, the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. *Id.* To satisfy this burden at summary judgment, a plaintiff must either produce substantial evidence that the employer's proffered reasons for its actions is false or show that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Black v. Pan American Laboratories, L.L.C.*, 646 F.3d 254 (5th Cir. 2011).

Church's case law and argument focus entirely on showing that Alliance's explanation is pretext. Church cites a district court case holding that a plaintiff may show pretext by presenting evidence that the employer's reason for the adverse employment action was (1) factually baseless; (2) not the actual motivation for the discharge; or (3) insufficient to motivate the discharge. *Acker v. Deboer, Inc.*, 429 F. Supp 2d 828, 842 (N.D. Tex. 2006). With such evidence, a plaintiff may show that the defendant's proffered reason is false or unworthy of credence. See *Reeves* 530 U.S. 133, 148 (2000). Evidence showing that the defendant's explanation is false, taken together with the plaintiff's prima facie case is likely to support an inference of

discrimination.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

However, merely proving that a defendant's proffered reason is unpersuasive or contrived is insufficient to compel an inference that intentional discrimination occurred.  *Reeves*, 530 U.S. at 146–47.  The ultimate burden on the plaintiff is to show that intentional discrimination occurred.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253.  Even where a plaintiff has established a prima facie case and set forth evidence to reject the defendant's explanation, there are instances where no rational factfinder could conclude that the action was discriminatory.  *Reeves,* 530 U.S. at 148.  This occurs when a plaintiff has created only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred.  *Id.*

1.   No Evidence that Alliance's Explanation is False

Church relies on alleged factual inconsistencies in Alliance's explanation to create a fact issue regarding pretext.  First, Church claims that because the supervisors who actually told her that she was terminated knew she was pregnant, they should have told Spalla.  Church also claims that because these supervisors were vice-presidents, Alliance, as a whole, had notice of Chuch's protected status.  Church's implication is that either because her supervisor's knew or because Spalla should have known, Church should have been insulated from being terminated.  The purpose of Title VII and the TCHRA is for employer's to make employment decisions *without*

*regard* for improper criteria. Church cites no case law to support her argument that the failure of her supervisors to protect her from non-discriminatory termination is discrimination, and offers no evidence to show how such evidence shows that Alliance's explanation is false.

Second, Church relies on a number of alleged inconsistencies relating to Alliance's reasons for the RIF. Church alleges that her workload had increased as compared to what it was when she was hired, and that the Central region had an increased number of properties under management. Church claims both of these rebut Alliance's assertion that Alliance was suffering a business loss in the region. Chuch offers no evidence to show how one employee's workload goes to rebut the profitability of the region as a whole. Similarly, an increase in properties may provide evidence of growth in the size of Alliance, but Church offers no evidence establishing a connection between the amount of properties under management and profitability in the region. Church's alleged inconsistencies in Alliances reason for the RIF are no evidence to rebut Alliance's explanation that Church's position was identified for the RIF because her region was not profitable.

Third, Church relies on alleged inconsistencies in the way that Alliance executed the RIF. Church alleges that Alliance's explanation that it terminated other trainers is false. Church points to Cathy Dallas ("Dallas"), who Alliance also terminated in the RIF, and alleges that Dallas was not actually a trainer, but a

director of operations.  Church's evidence is a document which lists Dallas as a director of operations.  Church admits in her deposition that, in spite of the title for Dallas on the document, Dallas was a trainer in the company.  Similarly, Church claims that Spalla's decision to keep another train in Houston over Church is false.  Church relies on a document which it claims is a personnel list for Central Texas.  The document does not show a trainer in Houston.  The document is titled "Texas Operations Statistics" and is not dated.   Church admits in her deposition that she knows there is a trainer in Houston, an employee named Valerie Lacy.

Church argues that the inconsistencies between Alliance's explanation and documents listing Cathy Dallas as a director of operations and showing no trainer in Houston establish that Alliance's explanation is factually baseless.  Church admitted in her own deposition that Alliance's explanation was, in fact, correct regarding having a trainer in Houston and Cathy Dallas's position as a trainer.  Because Church admits the truth of these facts, the documents she cites to do not create an issue of fact on pretext.  Of the avenues to show pretext outlined by Church, she has attempted only to show that Alliance's explanation is factually baseless.  Church's evidence does not show that Church's inclusion in the RIF for purely business reasons is factually baseless.  Church's evidence fails to rebut Alliance's explanation and no reasonable factfinder could conclude Alliance's explanation is factually baseless.  Church has failed to produce a genuine issue of material fact as to pretext.

Church's allegations of factual inconsistencies are no evidence of pretext because the evidence on which Church relies does not actually establish any inconsistency.  Even if the Court found that Church has showed some inconsistency with the reasons or execution of the RIF, Alliance would still be entitled to summary judgment because, discrimination laws are not vehicles for judicial second-guessing of business decisions.  *Walton v. Bisco Industries, Inc.*, 119 F.3d 368 (5th Cir. 1997).  Church's allegations of factual inconsistencies in the RIF amount to a claim that the RIF was unwarranted and poorly executed.  The relevant inquiry in determining whether the plaintiff has created a fact issue is not whether the employer's evaluations were wise or correct, but whether they were honestly held and free of discriminatory bias.  *Grimes v. Tex. Dep't of Menal Health & Mental Retardation*, 12 F.3d 137, 142 (5th Cir. 1996).  Church has offered no evidence that Alliance did not honestly believe that the RIF was needed or that Church's position was appropriately included.

### 2.    No Reasonable Inference of Discrimination

If the Court assumed that Church's evidence was sufficient to reject the defendant's explanation, summary judgment would still be proper in this case.  In some cases, even where a plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  *Reeves*, 530 U.S. at 148.  These cases

are where the plaintiff might create a weak issue of fact as to whether the employer's reason was untrue, and there may be abundant and uncontroverted independent evidence that no discrimination had occurred.  *Smith v. Hewlett-Packard Co.*, 512 F. Supp.2d 587, 601–02 (N.D. Tex. 2007).  In these types of cases, the plaintiff's evidence may permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination, making summary judgment proper.  *See Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000).

Assuming that Smith had raised a tenuous issue of material fact concerning pretext, it is a weak issue of fact and there is abundant and uncontroverted evidence that no discrimination occurred.  It is uncontroverted that Alliance decided to go through restructuring during 2008 and 2009, including the RIF.  During that time Alliance terminated or reassigned over 100 employees including men and non-pregnant women as well as Church.  On the same date that Alliance terminated Church, Alliance also terminated 12 other employees, including four men and eight non-pregnant women.

To be discrimination, Church's termination had to be motivated by her protected characteristic.  To establish a fact issue under Church's theory of disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee not within her protected class under nearly identical circumstances.  *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001); *Okoye v. Univ.*

- 14 -

*of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–513 (5th Cir. 2001).  Because Church alleges pregnancy discrimination, the Court looks to the actions taken against non-pregnant females for comparable employees.  Although Alliance did retain non-pregnant females, the record shows as a whole that the treatment of non-pregnant females in the RIF was not preferential when compared to Church's treatment because Alliance also terminated many non-pregnant females in the same RIF.

Most importantly, it is undisputed that Spalla decided to terminate Church, decided to accelerate her termination; and Spalla had no knowledge that Church was pregnant at the time Spalla made these decisions.  Regardless of what other inconsistencies Church points out, Church cannot explain how these inconsistencies create a reasonable inference of discrimination when the evidence shows Spalla did not know of Church's pregnancy. No rationale jury could conclude that Church's pregnancy motivated or caused Alliance to terminate Church when there is no evidence that the decision maker, Spalla, knew Church was pregnant.

III.    Conclusion

For the reasons stated herein, Alliance's Motion for Summary Judgment is **GRANTED**, and Church's claims are hereby **dismissed with prejudice.**  Judgment

- 15 -

will be entered by separate document.

       **SO ORDERED.**

       Signed November 1st, 2012.


ED KINKEADE
UNITED STATES DISTRICT JUDGE